# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERRY L. STRICKLAND, SR.,<br>    Plaintiff, | ) ) ) ) | Civil Action No. 1:17-CV-311 |
| v. | ) ) ) | |
| HAINES CITY, FLORIDA, et al.,<br>    Defendants. | ) ) ) | Re: Motions to dismiss<br>ECF No. 53; ECF No. 55 |

## MEMORANDUM OPINION

**U.S.D.J. Susan Paradise Baxter**

Plaintiff Jerry Strickland, Sr., is suing Officer Ronald Adams and the City of Haines City, Florida under 42 U.S.C. § 1983 for violating his First, Fourth, and Fourteenth Amendment rights. This suit is based on the allegedly unlawful arrest of Mr. Strickland in Erie, Pennsylvania, based on a Florida warrant and his subsequent detention and extradition to face criminal charges in Florida.

Pending here are the separate motions to dismiss by Officer Adams and Haines City.

## Relevant Procedural History

This civil action was filed in this Court by Mr. Strickland acting on his own behalf. The Clerk of Courts originally assigned this case to then Chief Judge Joy Flowers Conti.

As Defendants to the original complaint, Plaintiff named Haines City Police Department, Ronald Adams, Christopher Colon, Joseph Sorrentino, and Anthony Sanfilippo. In opposition to the original complaint, Defendants moved to dismiss. ECF No. 14; ECF No. 19. Counsel entered

1

an appearance on behalf of Mr. Strickland. Judge Conti held oral argument and granted in part and denied in part the motions to dismiss. She found that personal jurisdiction over Adams and Haines City was likely, but then set forth deadlines for limited jurisdictional discovery and the filing of an amended complaint. Later, this case was re-assigned to the undersigned.

The operative complaint is the First Amended Complaint[1] which names as Defendants: the City of Haines City, Florida, and John/Jane Does 1-5[2] and Officer Ronald Adams, all employees of the Haines City Police Department. ECF No. 48. Mr. Strickland sets forth these four claims:

> Count I – a state tort claim of malicious prosecution under Restatement (Second) of Torts § 653 against Adams and the five Doe Defendants;
>
> Count II – a § 1983 claim against Adams and the five Doe Defendants[3];
>
> Count III – a § 1983 claim against the five Doe Defendants based upon their supervisory authority over and liability for the actions of Adams; and
>
> Count IV—a § 1983 *Monell* claim against Haines City.[4]

---

[1] Attached to the First Amended Complaint are several exhibits. The Court can consider, besides the allegations of the Complaint, "documents that are attached or submitted with the complaint, ... and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

[2] Mr. Strickland alleges that the John/Jane Does are officers at various ranks in the Haines City Police Department and that each "was personally involved in the issuance of a warrant for and arrest of Strickland, and/or supervised, reviewed, approved or acquiesced to these activities." ECF No. 48, ¶ 4.

[3] Count II has three separate parts: 1) a false arrest/imprisonment claim under the Fourth Amendment; 2) a malicious prosecution claim based on violation of due process under the Fourteenth Amendment; and 3) a retaliatory prosecution claim under the First Amendment.

[4] As pled, this is the only claim against Haines City.

Pending here are separate motions to dismiss filed by Haines City and Officer Adams under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6). ECF No. 53; ECF No. 55. These dispositive motions are fully briefed and are ripe for disposition by this Court.

**Plaintiff's Allegations**

Accepting as true Plaintiff's characterizations of the events on which this action is based, Jerry Strickland, a resident of Erie, Pennsylvania, is the father of Jerrea Strickland whose mother Elrica Roberts resides near Haines City, Florida. Jerrea, who was 16 or 17 years old, lived with her father Mr. Strickland in Erie or with her mother Elrica Roberts in Haines City, Florida. At the beginning of the school year of 2016-2017, Jerrea resided with her father in Erie, Pennsylvania and was enrolled in school. In early December 2016, Ms. Roberts traveled from Florida to Erie and physically removed Jerrea from school and took her to Florida.

On December 16, 2016, Ms. Roberts reported to the Haines City Police Department that Jerrea was missing from her residence. Officer Heriberto Hernandez of the Haines City Police Department initially investigated. Officer Hernandez spoke with Mr. Strickland in Erie. Strickland had learned that Jerrea was on her way to Erie but he denied having provided her with funds to travel or of assisting in her effort to leave Florida. Strickland also denied having made any recent trips to Florida. Officer Hernandez threatened Strickland with criminal prosecution and Mr. Strickland responded by again denying his involvement and stating the Florida law enforcement had no jurisdiction over him. Officer Hernandez turned the matter over to Defendant Officer Adams who continued to investigate the matter.

Officer Adams contacted the City of Erie Police Department for its assistance in locating Mr. Strickland and Jerrea. Officer Adams had multiple contacts with Erie Police Detective

Michael Hertel. On January 4, 2017, Adams confirmed that Jerrea was enrolled at East High School in the City of Erie School District.

Around two weeks later, Officer Adams spoke to Dennis Carter, the assistant principal at East High School, who confirmed the Jerrea was enrolled in and attending East High School. On January 27, 2017, Adams was advised by East High School's resource officer Frank Bugaj that he had spoken to Jerrea who explained that she bought her plane ticket and traveled to Erie, Pennsylvania by herself, and was currently residing with her father. Officer Bugaj followed up this conversation with an email to Adams the same date. Based on this information, Officer Adams removed Jerrea from NCIC/FCIC as missing on January 27, 2017.[5]

In early February, Officer Adams authored a "complaint affidavit" charging Mr. Strickland with aiding Jerrea in leaving Florida by providing her shelter and enrolling her in school in Erie, Pennsylvania. Although Ms. Roberts had earlier declined to pursue the matter, on February 13, 2017, Officer Adams pressured Roberts into pursuing charges against Strickland.[6] Adams then authored a second "complaint affidavit" concluding that "there is probable cause to file a complaint affidavit with the State Attorney's Office." ECF No. 48-3, page 4. Both "complaint affidavits" make note that Mr. Strickland stated that the Florida authorities had no jurisdiction over him. When he authored both "complaint affidavits," Officer Adams knew there was no evidence that Strickland had committed any criminal act in Florida.

---

[5] On February 6, 2017, the Erie Police Department closed the incident report as Jerrea was no longer considered missing. ECF No. 48-1, page 1.

[6] Officer Adams moves to strike this allegation under Rule 12(f) as scandalous and impertinent. Because "such motions are not favored," the motion to strike this allegation will be denied as it is related to the controversy. *See Higgins v. City of Philadelphia*, 2019 WL 3824227, at *1 (E.D. Pa. Aug. 13, 2019) *quoting Natale v. Winthrop Res., Corp.*, 2007 WL 2758238, at *14 (E.D. Pa. 2008). Officer Adams also moves to strike the entire complaint as a shotgun pleading. However, this pleading satisfies the notice pleading requirements of the Federal Rules of Civil Procedure. Both of these will be denied.

Mr. Strickland was charged with Interference with the Custody of a Minor and Contributing to the Delinquency or Dependency of a Minor. On April 13, 2017, the Circuit Court Criminal Division of Polk County, Florida issued a warrant for Strickland's arrest based on the information in the "complaint affidavits."

Three months later, Mr. Strickland was stopped by police in Erie, Pennsylvania for an alleged broken brake light. Based on the Florida warrant, Strickland was arrested. Mr. Strickland was extradited to Florida. The extradition transport was a week-long journey in which Strickland was confined in jails and detention facilities across several states. Strickland spent another week detained in Polk County before being arraigned on July 29, 2017. On August 11, 2017, Ms. Roberts formally sought a dismissal of all charges and on November 1, 2017, all charges against Strickland were *nolle prossed*. Between the date of his booking and the dismissal of the charges against him, Strickland incurred loss of time and travel costs on at least nine separate occasions for court.

**Lack of Personal Jurisdiction**

Both Officer Adams and Haines City move for dismissal based on lack of personal jurisdiction. Because jurisdiction is a threshold issue, it must be addressed at the outset. Mr. Strickland asserts the existence of specific personal jurisdiction over Officer Adams and Haines City. Specific personal jurisdiction applies when the suit arises out of or relates to the defendant's contacts with the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011).

When a defendant asserts a motion to dismiss for lack of personal jurisdiction, it becomes the plaintiff's burden to adduce facts that establish personal jurisdiction. *Fatouros v. Lambrakis*,

627 F. App'x 84, 86–87 (3d Cir. 2015); *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). If the court does not hold an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *Fatouros,* 627 F. App'x at 86–87; *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). In determining whether the plaintiff has made out his prima facie case, the court must accept the plaintiff's allegations as true and construe any disputed facts in the plaintiff's favor. *Fatouros,* 627 F. App'x at 86–87; *Metcalfe*, 566 F.3d at 330.

Federal Rule of Civil Procedure 4(k) authorizes a federal district court to exercise personal jurisdiction in accordance with the law of the state where it sits. *See* Fed. R. Civ. P. 4(k)(1); *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). Under Pennsylvania law, specific personal jurisdiction over a nonresident defendant is permitted "to the fullest extent allowed under the Constitution of the United States" and "based on the most minimum contact with this Commonwealth allowed under the Constitution." 42 Pa. Cons. Stat. Ann. § 5322(b); *see Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 211 (3d Cir. 2014).

The Due Process Clause permits the exercise of personal jurisdiction when there are sufficient "minimum contacts" between a non-resident defendant and the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) *quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In determining whether there are sufficient minimum contacts, the court must determine whether the defendant "purposefully directed" his activities at residents in the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), or whether there was "some act by which the defendant purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its

laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) *citing Int'l Shoe*, 326 U.S. at 319. To be constitutionally sufficient, the defendant's contacts must not be "random, fortuitous or attenuated." *Burger King,* 471 U.S. at 475 n.18.

The Third Circuit has condensed the jurisdictional analysis into a single test: first, the defendant must have purposefully directed its activities at the forum; second, the litigation must arise out of or relate to at least one of those activities; and finally, if the prior two requirements are satisfied, the court *may* consider whether the assertion of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. *See O'Connor,* 496 F.3d at 317. The first two parts of this analysis determine whether there are sufficient minimum contacts such that the defendant could be said to have "purposefully availed itself of the privilege of conducting activities within the forum state." *Williams v. Johnson*, 2009 WL 3152135, at *3 (E.D. Pa. Sept. 30, 2009) *citing D'Jamoos*, 566 F.3d at 102-03. The contacts must be enough that the defendant "should reasonably anticipate being haled into court there." *Id*. at *4. The analysis demands a "highly realistic" approach, *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1224 (3d Cir. 1992), that considers the relationship among the forum, the defendant, and the litigation. *See Frontier Ins. Co. v. Nat'l Signal Corp.,* 1998 WL 778333, at *2 (E.D. Pa. Nov. 9, 1998) *citing Mellon Bank,* 960 F.2d at 1221.

Officer Adams contends that he lacks sufficient minimum contacts with Pennsylvania because his involvement is limited to the preparation of the probable cause affidavit in Florida. However, Plaintiff's allegations as to Adams (and Haines City since Adams acted as an employee or agent of the City) are not limited to preparation of the affidavits. Mr. Strickland alleges: 1) Adams contacted the Erie Police Department to inform Erie police officers of the violation of a custody order involving Jerrea Strickland; 2) Adams contacted the assistant

principal at East High School in Erie; 3) on a separate occasion, Adams contacted the resource officer at East High School; 4) Adams contacted the Erie Police Department multiple times by phone and emails in his efforts to locate Jerrea Strickland; and 5) Adams caused the Florida arrest warrant to be issued. Additionally, as to Haines City, Mr. Strickland alleges that Haines City Police Officer Hernandez spoke with him in Erie during the early days of the investigation as to Jerrea's whereabouts and threatened him with criminal prosecution in Florida.

Based on these factual allegations, the Court finds that Officer Adams and Haines City purposefully availed themselves of the privilege of conducting activities within this Commonwealth, and thereby invoked the benefits and protections of its laws. *Burger King*, 471 U.S. at 474–75; *Hanson*, 357 U.S. at 253. Thus, they had sufficient contacts with this forum so that they should have reasonably expected to be "haled" into a Pennsylvania court if sued for events arising out of activities here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Because Strickland has established a prima facie case for exercising specific personal jurisdiction over these Defendants, it becomes Defendants' burden to "present a compelling case" that the Court's assertion of jurisdiction would be unreasonable. *Mellon Bank,* 960 F.2d at 1226. Among the factors to be considered are "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 1222, *quoting Burger King*, 471 U.S. at 477. "[T]his second tier of analysis is discretionary with the court." *Id.*

Although Defendants dispute the existence of sufficient minimum contacts, Officer Adams has not tried to show that the exercise of personal jurisdiction would be unreasonable based on the factors listed. The Court thus finds no basis for concluding that its assertion of jurisdiction over Officer Adams violates traditional notions of fair play and substantial justice. *See Mellon Bank,* 960 F.2d at 1227 ("Because the defendants bear the burden of showing the unreasonableness of an otherwise constitutional assertion of jurisdiction, and because they have failed to raise the issue in this court, we conclude that this is not an 'appropriate case' in which to consider the other factors bearing on 'fair play and substantial justice.'"). For these reasons, Officer Adams' motion to dismiss under Rule 12(b)(2) will be denied.

To show the exercise of personal jurisdiction is unreasonable, Haines City argues that

> It also seems unreasonable for the citizens of an out-of-state municipality like Erie, Pennsylvania, to have to pay the costs of litigation in a state where the local municipality was acting to investigate a law enforcement issue for a citizen of that municipality. It is unfair to burden the Pennsylvania community with jury service, to have a Pennsylvania trier of fact evaluate Florida law, and to have a Pennsylvania court resolve a controversy arising in Florida and involving Florida actors operating under Florida law.

ECF No. 54, page 7.

None of the points in Haines City's argument is an appropriate factor to be considered in the discretionary analysis to be conducted by the Court. *Mellon Bank*, 960 F.2d at 1226 (it is defendant's burden to present a compelling case that jurisdiction would be unreasonable). While it is obvious that there is a burden on Haines City, there is an even greater burden on Mr. Strickland's interest in obtaining convenient and effective relief. Mr. Strickland traveled to Florida multiple times to defend himself from the criminal charges. Mr. Strickland should not have to travel to Florida to challenge the violation of his constitutional rights arising out of those same criminal charges. The exercise of personal jurisdiction over Haines City does not violate

traditional notions of fair play and substantial justice. Haines City's motion to dismiss under Rule 12(b)(2) will be denied.

**Venue**

Next, Haines City raises the question of whether venue is appropriate in the Western District of Pennsylvania. "In federal court, venue questions are governed either by 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). If venue is inappropriate, a court may either dismiss the action or transfer it to the court which has appropriate venue. 28 U.S.C. § 1404; 28 U.S.C. § 1406. Section 1406 "applies where the original venue is improper and provides for either transfer or dismissal of the case." *Jumara*, 55 F.3d at 878. Section 1404(a) provides for transferring a case in which both the original and the requested venue are proper. *Id*. Haines City invokes both provisions, moving to dismiss the complaint for improper venue pursuant to § 1406 and alternatively, moving to transfer to the Middle District of Florida pursuant to § 1404.[7]

28 U.S.C. § 1391(b) provides that venue lies in:

> (1) A judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; **[or]** (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred …

*Id*. It is the defendant's burden to show that venue is improper. *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 160 (3d Cir. 2012).

---

[7] As explained in *Jumara*, "[W]hile either statute could theoretically provide a basis for the transfer of a case, only § 1406 can support a *dismissal." Id.*

Taking Mr. Strickland's allegations as true[8], Officer Adams, the Doe Defendants, and Haines City are residents of the state of Florida so venue is appropriate in the Middle District of Florida under § 1391(b)(1). Venue is appropriate here in the Western District of Pennsylvania under § 1391(b)(2) as Mr. Strickland alleges that a substantial part of the events giving rise to the claims occurred in this District. Haines City has not met its burden to demonstrate that venue here is improper, so the motion to dismiss will be denied.

Like a motion to dismiss based on improper venue, the burden of establishing the need for transfer of venue still rests with the movant. *Jumara*, 55 F.3d at 879. The Third Circuit has instructed that courts should "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.*

The *Jumara* Court identified twelve interests (six public and six private) "protected by the language of § 1404(a)." *Id.* The private interests include "(1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum.)" *Id.* at 879. The public interests are "(7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative

---

[8] In ruling on a Rule 12(b)(3) motion, "[a]ll well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012) *quoting* 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE, AND PROCEDURE § 1352, at 324 (3d ed. 2004).

administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable law in diversity cases." *Id.* These factors will be considered in turn.

Mr. Strickland's choice of forum weighs against transferring venue as a plaintiff's "choice of venue should not be lightly disturbed." *Jumara,* 55 F.3d at 879. *See also Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970). The defendant's choice of forum favors transfer. Some facts underlying Mr. Strickland's claim occurred in Florida and some occurred in Pennsylvania, so this factor favors neither side.

The convenience of the parties and their relative physical and financial conditions favors Mr. Strickland. Mr. Strickland alleges that he has already incurred the cost of travel back and forth to Florida to defend himself against the criminal charges. Mr. Strickland should not have to incur further travel costs to Florida to pursue the vindication of his constitutional rights, too. Furthermore, Mr. Strickland filed this lawsuit pro se and he was granted in forma pauperis status as he has limited financial means. Meanwhile, Haines City presumably has the financial ability to defend itself in this forum.

The convenience of the witnesses and the location of records weighs in favor of neither side as there are likely to be witnesses and records in Florida as well as in Pennsylvania and teleconferencing and fax machines may be used to overcome any inconvenience.

The enforceability of a judgment rendered in the Western District is no less enforceable than one in the Middle District of Florida, so this factor is neutral.

According to the most recent data provided by the United States Courts, 2,675 civil cases were filed in this district between April 1, 2018 and March 30, 2019. By comparison, 8,641 civil

cases were filed in the Middle District of Florida for the same period.[9] This district[10] has six active judges, ten senior judges, and six magistrate judges, while the Middle District of Florida[11] has fourteen active judges, fifteen senior judges, seventeen active magistrate judges, and five recalled magistrate judges. Given the districts' relative caseloads and number of judicial officers, this factor favors denial of transfer.

The local interests in deciding local controversies at home and the public policies of the fora are neutral as both venues have competing interests. Pennsylvania has an interest in protecting its residents from civil rights violations and Florida has an interest in protecting its minor residents and in overseeing its local police departments.

Because this is not a diversity action, the last factor does not apply.

Considering all the factors, the majority of the factors are neutral, with a few factors weighing in favor of denial of a transfer. For these reasons, this Court will not disturb Mr. Strickland's initial choice of venue and the motion to transfer will be denied.

---

[9] *See* Administrative Office of the United States Courts, Table C-3—U.S. District Courts-Civil Cases Commenced, by Nature of Suit and District, During the 12-Month Period Ending March 31, 2019, https://www.uscourts.gov/statistics/table/c-3/federal-judicial-caseload-statistics/2019/03/31.

[10] *See* https://www.pawd.uscourts.gov/judges.

[11] *See* https://www.flmd.uscourts.gov/judges.

The remainder of Defendants' motions argue for dismissal based on Mr. Strickland's failure to state a claim upon which relief can be granted. These will be reviewed under the *Twombly/Iqbal* standard.[12]

**State Tort Claim of Malicious Prosecution**

To state a claim of malicious prosecution under Pennsylvania law, "the plaintiff must show that the defendant initiated or procured the institution of criminal proceedings against plaintiff (1) without probable cause; (2) with malice; and (3) the proceedings must have terminated in favor of the plaintiff." *Amicone v. Shoaf*, 423 Pa.Super. 281, 285 (Feb. 26, 1993) *citing Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249,* 544 A.2d 940, 941 (Pa. 1988).

In support of his motion to dismiss, Officer Adams argues that Plaintiff has failed to state a prima facie claim of malicious prosecution because there are no factual allegations that Adams initiated criminal proceedings.[13] In opposition, Strickland argues that his allegation that Adams' drafting of the two "complaint affidavits" which led to the arrest warrant and Strickland's eventual arrest are sufficient to state a claim.

---

[12] A complaint must be dismissed under Rule 12(b)(6) if it does not allege "enough facts to state a claim for relief that is plausible on its fact." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[13] Adams also argues generally that probable cause existed. The standard of probable cause "represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime." *Gerstein v. Pugh*, 420 U.S. 103, 112 (1975). The inquiry here will be whether there was probable cause for the filing of criminal charges of Interference with the Custody of a Minor and Contributing to the Delinquency or Dependency of a Minor under Florida law. This will be a factual matter more appropriate for summary judgment or for trial. Because the probable cause determination is a fact-specific inquiry (*see Maryland v. Pringle*, 540 U.S. 366, 371 (2003)), its existence or absence in a § 1983 action is generally a question for the trier of fact. *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997).

The Court looks to the Restatement (Second) of Torts "to determine what is sufficient to constitute the initiation of criminal proceedings." *Gallucci v. Phillips & Jacobs, Inc.*, 418 Pa. Super. 306, 317 (1992). Criminal proceedings are "instituted" when "process is issued for the purpose of bringing the person accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for later determination of his guilt or innocence…" Restatement (Second) of Torts § 654 (1977). However, in the context of the state tort of malicious prosecution, "one who procures a third person to institute criminal proceedings against another is liable just as if he himself had initiated the proceedings." *Hess v. Lancaster Cty.,* 514 A.2d 681, 683 (1986).

Mr. Strickland's factual allegations against Officer Adams are sufficient to state a claim of malicious prosecution at this early stage of the proceedings. Although Mr. Strickland does not allege that Officer Adams applied for the arrest warrant, he does allege that an arrest warrant was issued based on the false information Adams provided in the complaint affidavits.[14] What is unknown to this Court are the procedures by which an arrest warrant is obtained in Polk County, Florida. This will be a question answered during discovery.

While Mr. Strickland must ultimately prove every element of his claim at trial, his factual allegations relating to his malicious prosecution claim are sufficient to withstand a motion to dismiss at this stage of the litigation. *See Swope v. City of Pittsburgh*, 90 F. Supp. 3d 400, 405 (W.D. Pa. 2014) *citing Oatway v. Am. Int'l Grp., Inc.*, 325 F.3d 184, 187 (3d Cir. 2003) (The

---

[14] *See, for example,* ECF No. 48, ¶ 47 ("Based upon the 'complaint affidavits,' and the false information contained therein, a warrant for Strickland's arrest was issued on April 13, 2017. Exhibit E.").

question is not whether the plaintiff will prevail in the end. Rather, the question "is whether the plaintiff is entitled to offer evidence in support of his or her claims.").

**§ 1983 Claim of False Arrest/False Imprisonment**

Mr. Strickland alleges that the actions of Officer Adams and the Doe Defendants were "deliberate and intentional" or were "grossly negligent and deliberately indifferent" and his arrest was made "with recklessness and/or deliberate indifference to his constitutional rights." ECF No. 48, ¶¶ 72-74.

Claims under § 1983 for false arrest/false imprisonment are "grounded in the Fourth Amendment guarantee against unreasonable seizures." *Wiggins v. McAndrew*, 2018 WL 3727389, at *7 (M.D. Pa. Aug. 6, 2018) *citing Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001). *See also Berg v. County of Allegheny*, 219 F.3d 261 (3d Cir. 2000). A § 1983 claim action for false arrest made under a warrant will succeed when a plaintiff shows: (1) that the police officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant"; and (2) that "such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) *quoting Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). The elements of a false imprisonment claim under § 1983 are "(1) that the plaintiff was detained; and (2) that the detention was unlawful." *James v. City of Wilkes-Barre*, 700 F.3d 628, 634 (3d Cir. 2012) *citing Wallace v. Kato*, 549 U.S. 384, 389 (2007).

False arrest and false imprisonment "are essentially the same claim." *Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa.) (citing Pennsylvania cases), *aff'd,* 202 F.3d 254 (3d Cir. 1999). When an officer acts "for the purpose of securing the administration of the law

without actual legal justification, false arrest is synonymous with false imprisonment." *Kauffman v. Barbagello*, 2013 WL 6388487, at *13 (M.D. Pa. Dec. 5, 2013) *quoting Gagliardi v. Lynn*, 285 A.2d 109, 110 (Pa. 1971).

Mr. Strickland has alleged that Officer Adams' knowing and intentional falsehoods, made after he had spoken with local law enforcement and Ms. Roberts, based the application for the arrest warrant.[15] These allegations state cognizable claims and are sufficient to survive the motion to dismiss.

### § 1983 Claim of Malicious Prosecution Based on Violation of Due Process

As to the due process claim, Officer Adams argues only that the Fourteenth Amendment provides no protection in this context. Defendant Adams is mistaken in this regard. *See Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir. 1998) ("…[W]e do not read *Albright [v. Oliver*, 510 U.S. 266 (1994)] to hold that a malicious prosecution claim can only be based on a Fourth Amendment violation. Accordingly, a § 1983 malicious prosecution claim may also include police conduct that violates the Fourth Amendment, the procedural due process, or other explicit text of the Constitution."); *Merkley v. Upper Dublin Sch. District*, 211 F.3d 782, 798 (3d Cir. 2000).[16] Adams' motion to dismiss will be denied in this regard.

---

[15] Strickland also alleges that each of the Doe Defendants was involved in the issuance of the warrant.

[16] In any event, just as with the state tort claim of malicious prosecution, Mr. Strickland's factual allegations state a malicious prosecution claim under § 1983. *See Wagner v. N. Berks Reg'l Police Dep't*, 2018 WL 3361070, at *2 (E.D. Pa. July 10, 2018) *quoting Kelley*, 544 A.2d at 951 (to state a claim of malicious prosecution under § 1983, a plaintiff must at least allege: "[1] the defendant ... instituted proceedings against the plaintiff ... [2] without probable cause, ... [3] with malice, and ... [4] the proceedings must have terminated in favor of the plaintiff.").

## § 1983 Claim of Retaliatory Prosecution

"Official reprisal for protected speech 'offends the Constitution because it threatens to inhibit exercise of the protected right,' and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) *quoting Crawford-El v. Britton*, 523 U.S. 574, 588, 594, n.10 (1998). To state a claim of retaliation under the First Amendment, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Turkos v. Dupont Borough*, 721 F. App'x 208, 212 (3d Cir. 2018) *quoting Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Additionally, if a retaliation claim is based on a criminal prosecution (in other words, retaliatory prosecution), a plaintiff must also allege the lack of probable cause for the criminal charges. *Nieves v. Bartlett,* ___ U.S. ___, 139 S. Ct. 1715, 1723 (May 28, 2019) *citing Hartman*, 547 U.S. at 265–66.

Officer Adams argues that Mr. Strickland has failed to allege facts sufficient to show that Adams' actions would deter a person of ordinary firmness from exercising his constitutional rights. However, Strickland alleges that Adams filed two false "complaint affidavits" after Ms. Roberts conveyed that she did not want to pursue criminal charges ultimately leading to Strickland's arrest, detention, and extradition. His saga of the in-custody journey from Erie to Florida alone would suffice as allegations supporting such deterrence. The allegations of the complaint are more than sufficient to survive this motion.

Next, Officer Adams argues that there is no causal link between the preparation of the affidavits and Mr. Strickland's comments to Officer Hernandez. Again, Officer Adams is

mistaken. The affidavits themselves both say that Mr. Strickland "displayed a disregard" for Florida courts and "referred to the fact that he would be in Pennsylvania and Florida law enforcement would not be able to prosecute him." ECF No. 48-2, page 2; ECF No. 48-3, page 1. This is sufficient to provide the causal link at this stage of the proceedings.[17]

**Qualified Immunity**

Finally, Officer Adams moves for dismissal of the claims against him based on qualified immunity.

The doctrine of qualified immunity insulates government officials from liability for damages insofar as their conduct does not violate clearly established rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "When properly applied" by the courts, the doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *See also Taylor v. Barkes*, ___ U.S. ___, 135 S. Ct. 2042, 2044 (2015) *quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). It is a defendant's burden to establish that they are entitled to qualified immunity. *See Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014) *citing Harlow*, 457 U.S. at 812.

The analytical framework that district courts have traditionally employed in determining whether the defense of qualified immunity applied was set forth by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Qualified immunity involves two inquiries: 1) do the facts alleged show that a state actor violated a constitutional right? and 2) was that constitutional right clearly established so that a reasonable person would know that their conduct was unlawful?

---

[17] Officer Adams also argues that he had probable cause to file the affidavits. As noted above, probable cause determinations are inappropriate at this early stage of the proceedings.

*Id.*

As discussed above, Mr. Strickland's complaint adequately alleges facts to support §

1983 claims under the First, Fourth, and Fourteenth Amendments. So this Court proceeds to the

second question: whether Mr. Strickland's constitutional rights were clearly established so that a

reasonable person in Officer Adams' position would know his conduct was unlawful. A right is

"clearly established" only when "every reasonable officer would have understood that what he is

doing violates the right." *Zaloga v. Borough v. Moosic*, 841 F.3d 170, 175 (3d Cir. 2016).

Ordinarily, at this step of the analysis, the Court should define the right at issue with

contextual specificity.[18] Here, at this stage of the proceedings, the factual allegations are not

detailed enough to define the right at issue with the required specificity. So to conduct any kind

of qualified immunity analysis, the right must be defined somewhat broadly. In light of the facts

as they are pled, a reasonable officer should have known that his alleged conduct was unlawful.

*See Lippay v. Christos,* 996 F.2d 1490, 1502 (3d Cir. 1993) *citing Franks v. Delaware,* 428 U.S.

154 (1978) ("Where a police officer causes an arrest to be made pursuant to a warrant which he

obtained on the basis of statements he knew to be false or on the basis of statements he makes in

reckless disregard of the truth, a plaintiff may recover damages under section 1983 for

unreasonable seizure of his person in violation of the Fourth Amendment."); *Torres v.*

*McLaughlin*, 163 F.3d 169 (3d Cir. 1998) (discussing *Albright v. Oliver*, 510 U.S. 266, and

determining that malicious prosecution claims can be based on the Fourteenth Amendment);

---

[18] "For the 'clearly established' prong of the analysis, the law directs that the right at issue be
framed by the specific facts of the case." *Knight v. Bobanic*, 2019 WL 3262393, at *9 n.13
(W.D. Pa. May 17, 2019) *citing Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638-39 (3d
Cir. 2015). "The 'clearly established' injury 'must be undertaken in light of the specific context
of the case, not as a general proposition." *Id.* at *6, *quoting Brosseau v. Haugen*, 543 U.S. 194,
198 (2004).

*Hartman v. Moore*, 547 U.S. 250 (2006) (First Amendment right to be free from retaliatory prosecution).

Officer Adams is free to continue to pursue qualified immunity after discovery is completed in a dispositive motion, if the undisputed facts warrant, or take the facts to a jury at trial. *Eddy v. Virgin Islands Water & Power Auth.*, 256 F.3d 204, 210 n.3 (3d Cir. 2001) ("Qualified immunity may be raised in a motion to dismiss at the pleading stage, in a motion for summary judgment after discovery, or as an affirmative defense at trial."); *Foster v. City of Philadelphia*, 2014 WL 5821278, at *22 (E.D.Pa. 2014).

### *Monell* Claim against Haines City

Haines City moves to dismiss the *Monell* claim against it. Generally, a municipality or local governing body cannot be held liable under § 1983 for the constitutional torts of its employees through the doctrine of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). However, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*

When a § 1983 claim is asserted against a municipality, the complaint must allege that the plaintiff's constitutional rights were violated by the execution of an official policy or custom of the municipality. *Id. See also Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). To state a facially plausible *Monell* claim, the plaintiff must allege: (1) a policy or custom that deprived the plaintiff of a federally protected right, (2) that the municipality, by its "deliberate conduct," acted as the "moving force" behind the alleged deprivation, and (3) "a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

For *Monell* liability, a policy is defined as a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." *Simmons v. City of Philadelphia,* 947 F.2d 1042, 1059 (3d Cir. 1991) (alteration in original) *quoting Monell,* 436 U.S. at 690. *See also Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. Jan. 29, 2019). Meanwhile, a custom is defined as "an act 'that has not been formally approved by an appropriate decision-maker,' but that is 'so widespread as to have the force of law.'" *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) *quoting Brown*, 520 U.S. at 404. Significantly, a municipality "cannot be deemed to have engaged in a constitutional violation by virtue of a policy [or] custom" in the absence of a "conscious decision or deliberate indifference of some natural person." *Simmons,* 947 F.2d at 1063. A policymaker is an official with "final unreviewable discretion to make a decision or take an action." *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1481 (3d Cir. 1990). Accordingly, "to state a *Monell* claim upon which relief may be granted, a complaint must include the identity of the municipality's final policymaker and factual allegations that 'link the alleged offending policies or customs to' that final policymaker." *Verrecchia v. City of Philadelphia,* 2017 WL 264388, at *6 (E.D. Pa. Jan. 19, 2017) *quoting Rees v. Office of Children & Youth,* 473 F. App'x. 139, 143 (3d Cir. 2012).

Mr. Strickland has only identified two Defendants: Officer Adams and Haines City. He has also named five Doe Defendants identified as employees of Haines City Police Department who were "personally involved in the issuance of a warrant for and arrest of Strickland, and/or supervised, reviewed, approved or acquiesced to these activities." ECF No. 48, ¶ 4. Mr. Strickland has identified no individual who is a policymaker and so the *Monell* claim is not viable at this stage of the proceedings. Discovery may remedy this and Mr. Strickland will be permitted to amend his complaint in this regard.

**Conclusion**

Both motions to dismiss will be denied on the basis of lack of personal jurisdiction. Haines City's motion to dismiss based on improper venue will be denied and its motion for transfer of venue will be denied.

Mr. Strickland has stated valid claims against Officer Adams, but has failed to state a valid *Monell* claim against Haines City. However, Mr. Strickland will be allowed to amend his *Monell* claim and to name the John/Jane Does following discovery.

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERRY L. STRICKLAND, SR. | ) | |
|     Plaintiff, | ) | Civil Action No. 1:17-CV-311 |
| | ) | |
| | ) | District Judge Baxter |
|     v. | ) | |
| | ) | |
| | ) | Re: Motions to dismiss |
| HAINES CITY, FLORIDA, et al., | ) |     ECF No. 53; ECF No. 55 |
|     Defendants. | ) | |

# O R D E R

AND NOW, this 25th day of September, 2019;

IT IS HEREBY ORDERED that the motion to dismiss filed by Officer Adams [ECF No. 55] is denied.  IT IS FURTHER ORDERED that the motion to strike [ECF No. 55] filed by Defendant Adams is denied.

IT IS FURTHER ORDERED that the motion to dismiss filed by Haines City [ECF No. 53] is denied as to the lack of personal jurisdiction and improper venue. The motion to transfer based on improper venue is denied. The motion to dismiss is granted as Plaintiff has failed to state a *Monell* claim against Haines City. Plaintiff will be allowed to amend this claim following discovery.

An Initial Case Management Conference will be scheduled by separate Order.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States District Judge

1